[Sac. No. 6829.   In Bank.   Dec. 19, 1958.]

STOCKTON THEATRES, INC. (a Corporation), Appellant, v. EMIL PALERMO et al., Respondents.

Freed & Freed and Eli Freed for Appellant.

Forrest E. Macomber, in pro. per., Smith & Zeller and Charles A. Zeller for Respondents.

CARTER, J.—This is an appeal by plaintiff from an order refusing to allow as costs on appeal the amount of the premium on a bond to preserve attachments pending appeal.

This is part of a long line of litigation which, it will be recalled, began when Emil Palermo, the owner and lessor of the Star Theater in Stockton, brought an action for declaratory relief against the lessee, Stockton Theatres, Inc., in an endeavor to have the lease declared void because the stockholders of the lessee were Japanese nationals. This court reversed the trial court (*Palermo* v. *Stockton Theatres, Inc.*, 32 Cal.2d 53 [195 P.2d 1]) holding that the lease was valid and that under it, Stockton Theatres was entitled to possession of the theater as tenant thereof. Stockton Theatres then brought an action for restitution, and after trial, in which plaintiff was held entitled to recover from Palermo the sum of $13,658.75, both parties appealed. Plaintiff prevailed on its appeal and the judgment of the lower court was modified to provide that Stockton Theatres recover the sum of $45,992.12 and that it was entitled to costs on appeal (*Stockton Theatres, Inc.* v. *Palermo*, 121 Cal.App.2d 616 [264 P.2d 74]).

On the appeal in the restitution case, Stockton Theatres argued that it was entitled to a total amount of $130,000. The bond premium necessary for a sufficient bond to preserve its attachment during the pendency of the appeal amounted to a total sum of $6,980.49. When the remittitur came down, Stockton Theatres filed its memorandum of costs and disbursements on appeal; Palermo objected to the inclusion of the bond premium as an item of costs. The trial court granted Palermo's motion to tax costs on appeal as to this item on the ground that section 1035 of the Code of Civil Procedure did not apply at the appellate stage (*Stockton Theatres, Inc.* v. *Palermo*, 47 Cal.2d 469 [304 P.2d 7]).\*

Section 1035 of the Code of Civil Procedure provides: "Whenever in this code or by other provision of law costs are allowed to a party to an action or other proceeding, such

---

\*The above brief resume of this litigation is taken from our opinion in 47 Cal.2d 469 [304 P.2d 7]. A more complete statement will be found in our opinion in *Palermo* v. *Stockton Theatres, Inc.*, 32 Cal.2d 53 [195 P.2d 1].

costs shall include the premium on any surety bond which was procured by the party entitled to recover costs in connection with the action or proceeding *unless the court determines that the bond was unnecessary.*" (Emphasis added.) We reversed and the "trial court [was] directed to determine the necessity for the bond required to preserve the attachment pending appeal, and, if it is determined that such bond was necessary, allow the amount of the premium paid therefor as an item of the costs on appeal to which plaintiff is entitled. The amount so allowed to be a lien upon any property of Palermo covered by the attachment heretofore levied." (47 Cal.2d 469, 478, 479.)

Thereafter, the trial court, after taking evidence, determined that a bond was unnecessary "for the preservation of the attachment on appeal and the amounts of premium thereon is not a proper item of costs on appeal. . . ." Plaintiff then prosecuted this appeal.

█ Inasmuch as section 946 of the Code of Civil Procedure specifically states that "An appeal does not continue in force an attachment, unless an undertaking be executed and filed on the part of the appellant by at least two sureties, in double the amount of the debt claimed by him . . ." it appears that the trial court could not have meant that such bond was unnecessary "for the preservation of the attachment on appeal . . ." but intended to say that the bond was unnecessary because of defendant Palermo's financial standing.

The record at the last hearing shows that Palermo testified that on the day (August 10 or 11, 1948) Stockton Theatres filed its complaint in restitution he withdrew $27,000 from one bank account and took the money to Reno, Nevada, where he placed it in a safety deposit box; that he also withdrew over $10,000 from another bank account and took the money to Nevada; that the money was placed in the Reno safety deposit box for "protection"; that he opened two bank accounts in Stockton in his brother's name; that his brother was mentally incompetent; that his own name was on the accounts as "agent" and that he was the only one entitled to make withdrawals therefrom; that his brother had nothing whatsoever to do with the accounts; that he told his brother he was depositing in his name "to protect my interest so that I couldn't get any attachments slapped to me. . . ." In answer to the question "Why do you keep the bank accounts in the Bank of America in your brother's name?" Palermo replied: "Protection. I never know when I am going to be

attached." When asked by whom he might be attached, he replied: "Well, by anybody." The record shows that Mr. Palermo was extremely vague as to what happened to the money he had placed in the Reno safety deposit box; that he didn't "believe" he had ever deposited it in a California bank; that he used some of it to pay the judgments against him; that he had to borrow $20,000 from a bank to pay the judgments; that he had to put up stocks of his as collateral; that the judgment was paid by check drawn on the brother's account which he signed as "agent." The record shows, through the testimony of an officer of the bank, that the savings account was opened by Palermo in his brother's name with an initial deposit of $15,000; that the highest balance was $15,378; that the checking account in the brother's name was opened in 1950 with an initial deposit of $1,000; that the March, 1954 balance in the checking account was $3,329.11.

With respect to the real property owned by him, Palermo testified that the Star Theater was built in approximately 1930; that he inherited it from his father in 1941; that it was appraised for inheritance tax purposes at $33,000; that in 1951 the theater had a value of $110,000; that he based his valuation on the building on "what the monthly rent" would be; that the monthly rent from the whole building would run "over a thousand dollars"; that his reason for placing this valuation on the theater was that it had a seating capacity of 530; that he placed a rental valuation of $1.75 per month per seat and multiplied by the number of seats; that his reason for using the $1.75 per seat figure as a reasonable rental was that "I believe a couple years back I read it in the Box Office Magazine. They determine it that way. It is a theater magazine, I receive it. We always gave—I receive two different magazines. And there was a writeup in there." When asked if that was the only basis for his opinion that the reasonable rental value per seat was $1.75 he replied, "Yes, that is." Palermo also testified that the theater building included a candy store for which he received $100 per month rent, and a bar for which he received $80 a month rent; and that although his estimate of the reasonable rental value of the theater would amount to $927.50 per month (530 x $1.75), he had received between $300 and $360 per month rent from Stockton Theatres, Inc.

Palermo testified that the theater business, as distinguished from the real property, had a value of $60,000 in 1951; that he had no basis for this valuation; that someone (he was not

sure who) had made him an offer to buy it at that time for that amount; that "The business itself has no value whatsoever unless there is a lease so that the person who buys the business can actually occupy the place of business and operate it as a motion picture theater; that to *him* it had a "very large value, that business does"; that at the time he left Stockton in 1948, after the filing of the restitution action, all the equipment, seats and furnishing of the Star Theater were in the name of Ray Rowen; that he had an arrangement with Rowen for buying it back; that he paid Rowen "about" $25 a month rental for the seats, equipment and furnishings.

Concerning the home owned by him, Palermo testified that in 1951 it was worth $10,000; that he sold it in 1955 for that amount; that he didn't know whether it had increased in value or not.

It will be recalled that in 1948 when Stockton Theatres brought the action for restitution it claimed it was entitled to the sum of $130,000 from Palermo. It appealed from the judgment of the trial court still contending it was entitled to that sum. Section 946 of the Code of Civil Procedure provides that an appeal does not continue in force an attachment unless the appellant procures a bond in double the amount claimed by him (see our opinion, *Stockton Theatres, Inc.* v. *Palermo,* 47 Cal.2d 469, 472, 473 [304 P.2d 7]). ██ Section 1035 of the Code of Civil Procedure provides that the cost of such a bond shall be included as a cost allowed to a party entitled to costs "unless the court determines that the bond *was* unnecessary." (Emphasis added.) It will be noted that the Legislature used the word "was," thereby declaring its intention that the necessity for the bond be measured as of the time of perfecting the appeal. Judgment was entered in the restitution action on April 27, 1951; Stockton Theatres filed its notice of appeal on June 7, 1951. The District Court of Appeal opinion in which the judgment was modified so as to increase it by the sum of $32,333.14 was rendered on November 30, 1953. ██ Although Palermo testified that in 1951 the money had been removed from the Nevada safety deposit box and "returned to the State of California" no bank account owned or controlled by him reflects it, and it will be recalled that he testified that he did not "believe" he had ever deposited the money in a California bank. It will also be recalled that he continued to carry money in accounts in his incompetent brother's name so as to avoid attachments. It will also be recalled that at no time pertinent to this in-

quiry did either of these accounts contain sufficient sums to protect plaintiff had it recovered the sum claimed to be due it. The record further shows that Palermo owned, during this time, only the one-story brick building, and a home with an estimated value of $10,000. In view of his admissions that he removed his money to Nevada to "protect" it, that he carried other money in his brother's name to avoid attachments from *any* source, that he had sold all the theater equipment, furnishings, et cetera, to another person, it appears to us as a matter of law that the bond procured by plaintiff was necessary within the meaning of section 1035 of the Code of Civil Procedure.

Palermo earnestly argues that because plaintiff filed its notice of appeal 41 days after both giving and receiving notice of entry of judgment in the restitution case the bond was ineffective as a matter of law by reason of the provisions of section 946 of the Code of Civil Procedure. That section, in addition to providing that an appeal does not preserve an attachment unless a bond is procured by the appellant as heretofore noted, provides ". . . and unless, *within five days* after written notice of the entry of the order appealed from, such appeal be perfected." This same argument was made by Palermo to the District Court of Appeal in *Stockton Theaters* v. *Palermo,* 109 Cal.App.2d 616, 617 [241 P.2d 54], where he sought to have terminated and discharged plaintiff's attachment on the ground that plaintiff's appeal was not filed within the time permitted by section 946 of the Code of Civil Procedure. The court there denied Palermo's motion to vacate the attachments. Although the District Court of Appeal erroneously construed the effect of section 946 (see *Stockton Theatres, Inc.* v. *Palermo,* 47 Cal.2d 469, 474 [304 P.2d 7]), we held that portion of its opinion was dictum and not the law of the case. We said "In the instant case the court presupposed a situation for the purpose of illustrating its theory of how the statute should be construed. The illustration was clearly erroneous *and it is obvious that the decision was not predicated upon the court's construction of the statute.* Hence, we are not bound to follow the District Court's erroneous interpretation of the scope of section 946 of the Code of Civil Procedure under the doctrine of the law of the case." (Emphasis added.) We also said "*If,* as previously set forth, the District Court believed that the lien of attachment had 'merged with the judgment [and] said section [946] has no applicability,' it would appear that de-

fendants' motion to discharge the attachment should have been granted rather than denied.'' There is no merit to Palermo's argument in this respect since the holding of the District Court of Appeal has long since become final.

Having concluded as a matter of law that the record shows that a bond was necessary to preserve the attachment within the meaning of section 1035 of the Code of Civil Procedure, the order is reversed with directions to the trial court to allow the premiums on said bond as a cost on appeal.

Gibson, C. J., Traynor, J., and Spence, J., concurred.

SCHAUER, J., Dissenting.—In *Stockton Theatres, Inc.* v. *Palermo* (1956), 47 Cal.2d 469, 477 [10] [304 P.2d 7], we declared that ''Having concluded that section 1035 of the Code of Civil Procedure permits as an item of costs on appeal the premium on a bond where one is required by law (Code Civ. Proc., § 946) in order to preserve an attachment, the cause must be reversed and remanded for a *determination by the trial court* as to *whether* or not a *bond* was *necessary* in the case under consideration.'' (Italics added.) The order taxing costs was reversed and the trial court ''directed to *determine the necessity for the bond required* to preserve the attachment pending appeal, and, *if it is determined that such bond was necessary,* allow the amount of the premium paid therefor as an item of the costs on appeal to which plaintiff is entitled.'' (Pp. 478-479 of 47 Cal.2d; italics added.)

Following a hearing, including the taking of evidence, the trial court ''DETERMINED that under the law and evidence it was unnecessary to file the corporate surety bond herein for the preservation of the attachment on appeal and the amount of premium thereon is not a proper item of costs on appeal.'' I believe that the trial court's determination, made pursuant to our express direction, is supported by the record and that we should uphold it.

This was an action brought by plaintiff for restitution of the theatre, in which plaintiff recovered judgment in the trial court for $13,658.75. An abstract of that judgment against defendant was recorded in the office of the county recorder of the county (San Joaquin) in which the theatre (which defendant owns) is located. Both parties appealed from the judgment, with plaintiff claiming it was entitled to recover its entire demand of $130,000. It appears that the bond posted by plaintiff to preserve its attachment on appeal was in double

the amount (see Code Civ. Proc., § 946) of $116,341.25 ($130,000 claimed by plaintiff, less $13,658.75 covered by the recorded abstract of judgment), and the bond premium of $6,980.49 which plaintiff now seeks to have taxed to defendant as one of the costs on appeal was based on such doubled amount. However, although plaintiff prevailed on the appeal, it prevailed to the extent of an increase *of only* $32,333.44 over its trial court judgment of $13,658.75, and *not to the extent* of the $116,341.25 increase which it had claimed on appeal and on which (doubled) the bond premium was based. (See *Stockton Theatres, Inc.* v. *Palermo* (1953), 121 Cal.App.2d 616, 632 [264 P.2d 74].) Thus the sum of $32,333.44 won by plaintiff on the appeal was the only claim with respect to which it was justified in fairness and in law to claim and recover ''necessary'' costs on appeal. Otherwise there would seem to be no reasonable limit in the amount which might be claimed against a defendant whose property has been attached on a claim however grossly in excess of the actual recovery by plaintiff on appeal. If plaintiff here had recovered only an additional $100 on the appeal, rather than $32,333.44, under the majority opinion it apparently would still be considered ''necessary'' as a matter of law that plaintiff preserve its attachment by a bond in double the amount of $116,341.25. The majority must consider the entire amount to be necessary as a matter of law because they reverse the trial court's findings on the evidence and remand the cause ''with directions to the trial court to allow the [entire amount of] premiums on said bond.'' Surely a defendant should not be taxed with the premium incident to maintaining such an excessive claim.

In *Moss* v. *Underwriters' Report, Inc.* (1938), 12 Cal.2d 266, 274-275 [9-12] [83 P.2d 503], it was pointed out that the statute (Code Civ. Proc., § 1033) which provides that a successful litigant furnish a memorandum of his costs and ''necessary disbursements'' in the action ''does not contemplate that a defendant must pay all of the successful plaintiff's expenses in connection with the litigation,'' and that ''the right to reimbursement for expenses depends upon the statutory provisions concerning costs and not upon the necessity, in the mind of the litigant, or his counsel, for the outlay.'' (See also *Simms* v. *County of Los Angeles* (1950), 35 Cal.2d 303, 319 [217 P.2d 936].) In the present case the necessity, in the mind of plaintiff or his counsel, of maintaining an additional

claim on appeal in the amount of $116,341.25 does not warrant taxing defendant as a matter of law with the cost thereof when plaintiff was successful to the extent of only $32,333.44.

Further, from testimony of defendant, which the trial court was free to accept as true, defendant owned during the period here involved unencumbered real property of a value in excess of $100,000 upon which plaintiff's judgment was a lien following recording of the abstract thereof. This evidence is plainly sufficient to support that court's implied finding that plaintiff's security for its total recovery of nearly $46,000 ($13,658.75 original judgment, plus $32,333.44 additional recovery on appeal) was ample, and that court's determination that the surety bond to preserve the attachment on appeal was wholly unnecessary. Section 1035 of the Code of Civil Procedure provides that the premium on the bond is not recoverable as costs if the court ''determines that the bond was unnecessary.'' Pursuant to this court's direction, the trial court upon sufficient evidence has made its determination and I would uphold it and affirm the order appealed from.

Shenk, J., and McComb, J., concurred.

Respondents' petition for a rehearing was denied January 14, 1959. Shenk, J., Schauer, J., and McComb, J., were of the opinion that the petition should be granted.