[Sac. No. 7100. In Bank. Mar. 2, 1961.]

STOCKTON THEATRES, INC. (a Corporation), Appellant, v. EMIL PALERMO et al., Respondents.

Freed & Freed, Eli Freed and Kurt W. Melchior for Appellant.

Forrest E. Macomber, in pro. per., Gordon J. Aulik and Smith & Zeller for Respondents.

PETERS, J.—Stockton Theatres, Inc., appeals from two orders made after judgment, one entered on January 20, 1959, taxing an item of costs as effective on that date, and the other entered on April 30, 1959, which, in legal effect, overruled plaintiff's motion that such item of costs be allowed as of December 17, 1954, with interest from that date.

This litigation has been before the appellant courts on at least seven prior occasions.[1] The basic action was brought by plaintiff to secure a restitution of profits. The plaintiff obtained a judgment in 1949. Both sides appealed. The appellate court materially increased the amount of the judgment and expressly ordered that "the appellant theatre company to recover costs on appeal." (*Stockton Theatres, Inc.* v. *Palermo,* 121 Cal.App.2d 616, 632 [264 P.2d 74].) The plaintiff, after the issuance of the remittitur, filed in the trial court its memorandum of costs on appeal. Several of the items totaled $1,097.37. In addition, an item of $6,980.49 was listed, it being the admitted cost to the plaintiff of a surety bond given to preserve a certain attachment on appeal. The defendants challenged this last item. The trial court, on December 17, 1954, disallowed it, but allowed as costs the items totaling $1,097.37. The trial court disallowed the amount of the bond premium as costs because it ruled that section 1035 of the Code of Civil Procedure[2] was not applicable to costs on appeal.

---

[1]*Stockton Theatres, Inc.* v. *Palermo,* 109 Cal.App.2d 616 [241 P.2d 54]; 121 Cal.App.2d 616 [264 P.2d 74]; 124 Cal.App.2d 353 [268 P.2d 799]; 179 Cal.App.2d 323 [3 Cal.Rptr. 767]; 47 Cal.2d 469 [304 P.2d 7]; 51 Cal.2d 346 [333 P.2d 10]; *Palermo* v. *Stockton Theatres, Inc.,* 32 Cal.2d 53 [195 P.2d 1]. Five of these seven appeals involved, in whole or in part, the very item of costs here involved.

[2]The section provides: "Whenever in this code or by other provision of law costs are allowed to a party . . . such costs shall include the

The defendants did not appeal from the allowance of $1,097.37, and that portion of the award has long since become final. The plaintiff appealed from the order disallowing the $6,980.49. The plaintiff was successful on that appeal. This court held that section 1035, *supra*, did provide for bond premiums on appeal to be included in the costs when such premiums were reasonably "necessary" to preserve rights on appeal. The actual order of this court was that the order was "reversed and the trial court directed to determine the necessity for the bond required to preserve the attachment pending appeal, and, if it is determined that such bond was necessary, allow the amount of the premium paid therefor as an item of the costs on appeal to which plaintiff is entitled." (47 Cal.2d 469, *supra*, at p. 478.)

This, it will be noted, was a reversal in the legal sense. Up to this point it had been determined that such bond premiums were recoverable as a cost on appeal, but only when such expenditure was "necessary." There had as yet been no hearing on the necessity for such bond. Neither party had presented any evidence on that issue.

After the reversal, the trial court, as directed, held a hearing to determine whether the expenditure for the bond was "necessary." Both parties offered evidence on the issue. The trial court found that the expenditure was "unnecessary," and on April 12, 1957, entered its order denying the allowance of this item as a cost on appeal. Plaintiff again appealed, and again was successful. The majority of this court held that the evidence produced at the hearing demonstrated "as a matter of law" that the challenged expenditure was "necessary." The last paragraph of the majority opinion reads as follows:

"Having concluded as a matter of law that the record shows that a bond was necessary to preserve the attachment within the meaning of section 1035 of the Code of Civil Procedure, the order is reversed with directions to the trial court to allow the premiums on said bond as a cost on appeal." (51 Cal.2d 346, *supra*, at p. 352.)

Thereafter, the trial court ordered the cost of the premium on the bond taxed as an item of costs on appeal, but made its order effective only from the date of its entry, January 20, 1959. This meant, of course, that the award was to bear interest only from that date. The plaintiff moved to vacate the

premium on any surety bond which was procured by the party entitled to recover costs in connection with the action or proceeding unless the court determines that the bond was unnecessary."

order and for the allowance of the bond item as a part of the costs on appeal as of the date when costs were originally taxed, December 17, 1954. Such an allowance would authorize the running of interest on the amount of the bond premium from that date. (*In re Kennedy,* 94 Cal. 22 [29 P. 412]; *Dalzell* v. *Kelly,* 115 Cal.App.2d 60 [251 P.2d 343].) Upon the denial of the motions plaintiff appeals.

The sole question presented is, on what date did interest start to run on the award? The defendants contend that interest on a judgment for costs on appeal begins to run from the date of entry of the judgment, and that in the present case there was no judgment taxing the bond premium as a cost on appeal until January 20, 1959. The plaintiff contends that the original order taxing costs was made on December 17, 1954; that the trial court first erred on that date in failing to tax the bond premium as a cost on appeal; that after several appeals the error was corrected; and that the effect of these reversals was to modify the original order of December 17, 1954. Based on these premises, plaintiff urges that interest should have been allowed as of December 17, 1954.

We have concluded that neither contention is sound, and that the proper date from which the interest should run is April 12, 1957. That is the date the trial court entered its order denying the bond premium as an item of costs based on its finding that such expenditure was unnecessary. On the resulting appeal this court in 51 Cal.2d 346, *supra,* determined that on that date, as a matter of law, the trial court should have allowed the item involved.

There is no controlling authority to which we have been referred, or found, that deals with this particular subject. But the law applicable to the effect of reversals or modifications on interest on judgments generally would seem, by analogy, to be applicable. (*Dalzell* v. *Kelly, supra,* 115 Cal. App.2d 60, 62.)

A judgment bears legal interest from the date of its entry in the trial court even though it is still subject to direct attack. (*Bellflower City School Dist.* v. *Skaggs,* 52 Cal.2d 278, 280 [339 P.2d 848].) When a judgment is modified upon appeal, whether upward or downward, the new sum draws interest from the date of entry of the original order, not from the date of the new judgment. (*Beeler* v. *American Trust Co.,* 28 Cal.2d 435, 438 [170 P.2d 439]; *Barnhart* v. *Edwards,* 128 Cal. 572, 575 [61 P. 176]; 1 A.L.R.2d 479, 510-512, 520-521.) On the other hand, when a judgment

is reversed on appeal the new award subsequently entered by the trial court can bear interest only from the date of entry of such new judgment. (*Cowdery* v. *London etc. Bank,* 139 Cal. 298, 303 [73 P. 196, 96 Am.St.Rep. 115].)

[█ A judgment for costs should be governed by the law applicable to judgments generally. Such awards are, in fact, separate and complete judgments in themselves. (*Supera* v. *Moreland Sales Corp.,* 28 Cal.App.2d 517, 521 [82 P.2d 963].) █ Costs on appeal are provided for in section 1034 of the Code of Civil Procedure, and are therein made enforceable by execution in the same manner as a final judgment.

█ How do these rules apply to the present case? First, there was the order of December 17, 1954. The trial court disallowed on that date, the item of costs here involved. On appeal that order was reversed with instructions to the trial court to pass on the question of the necessity for the bond (47 Cal.2d 469, *supra*). That, as already pointed out, was a legal reversal. It did not modify the order of December 17, 1954. Quite to the contrary it directed the trial court to hold a hearing on the necessity for the expenditure, and to make its award of costs depend upon the outcome of that hearing. Up until this point no award of costs for this item could have been made because there had been no hearing or finding on the issue of necessity for the bond. If the court found the expenditure to be ''necessary,'' then it was directed to award the amount of the bond premium as costs. Under the general rule applicable to judgments, such an award would bear interest not from December 17, 1954, but from the date that this last order was made.

The trial court held such a hearing, and found the expenditure unnecessary, and on April 12, 1957, entered its order disallowing the challenged item. On appeal (51 Cal.2d 346, *supra*) this court held that, as a matter of law, the evidence demonstrated that the expenditure was necessary, and that on April 12, 1957, the court should have allowed this item of costs. The legal effect of this ''reversal'' was to make the order of April 12, 1957, state what it should have stated on that date. In a very real sense, in legal effect, it increased the original amount awarded as costs, and determined that, after showing necessity, plaintiff was entitled to this award as of April 12, 1957. Instead of reversing with directions, by allowing the item and then affirming the order as modified, this court ''reversed.'' This ''reversal'' obviously was, in

law and in fact, a modification. When the facts are considered in their entire context this conclusion is inescapable. On December 17, 1954, the court allowed as costs on appeal the sum of $1,097.37, but denied the cost of the bond premium totaling $6,980.49. At that time it held no hearing on the necessity of such expenditure. A finding on that issue is a condition precedent to the allowance of such expenditure. The December 17, 1954, ruling was reversed and the trial court ordered to hold the requisite hearing. On April 12, 1957, after the hearing, the trial court found the expenditure to have been unnecessary. But on appeal, in 51 Cal.2d 346, *supra*, this court held that on April 12, 1957, the trial court, as a matter of law, should have entered its order allowing the bond premium as an item of costs. The result of that order, couched in terms of a "reversal," was to hold that on April 12, 1957, plaintiff was legally entitled not only to the costs totaling $1,097.37 that had not been contested, but was entitled to an additional $6,980.49, making the total amount of costs on appeal to which plaintiff is entitled the sum of $8,077.86. That was the legal effect of the order of "reversal" contained in the opinion in 51 Cal.2d 346, *supra*. Although the order in that case was couched in terms of a reversal with directions, it had the legal and practical effect of modifying the original award. When, on January 20, 1959, the trial court, pursuant to directions, entered its order allowing the bond premium as a cost on appeal, it was necessarily deciding, pursuant to the order contained in the opinion in 51 Cal.2d 346, *supra*, that not only was such item recoverable, but that it should have been recoverable as of April 12, 1957. ▮▮▮ Thus, assuming that the rules applicable to interest on judgments generally should be applied to interest on awards of costs on appeal, the rule that is applicable is that such award when modified on appeal, whether upward or downward, bears interest from the date of entry of the original order, not from the entry of the new judgment. As applied to the facts of this case this means that the award should bear interest from April 12, 1957.

It is contended that, regardless of how logical this conclusion may be, it is contrary to the rule announced in *Cowdery* v. *London etc. Bank, supra*, 139 Cal. 298. It is urged that the rule of that case compels the conclusion that interest on this award should not commence until January 20, 1959. In this connection defendants rely on some general language in that opinion which they contend supports their contention. An examination of that case demonstrates that the general lan-

guage relied upon, while applicable to the facts of that case, has no application at all to the facts here presented.

That case did not involve any question of interest at all. The facts were that one Bandmann mortgaged his property to the London Bank. The bank foreclosed. A sale under the foreclosure was had and the bank purchased at the sale. The sale resulted in a deficiency of $3,574.34. A deficiency judgment was entered in that amount against Bandmann on December 7, 1895. In the meantime, Bandmann, on May 1, 1895, had sold the land to Cowdery. Bandmann appealed from the deficiency judgment. In the case of *London and S.F. Bank* v. *Bandmann*, 120 Cal. 220 [52 P. 583, 65 Am.St.Rep. 179], this court reversed the deficiency judgment "with directions that the trial court enter judgment in accordance with the views here expressed." (120 Cal. at p. 225.) Among the "views" expressed in the opinion was one that under the findings in the deficiency judgment action there was no finding (the case had been appealed without including the evidence) that a certain $1,000 obligation was owed by Bandmann personally. For that reason the court was of the opinion that on the record before it the $1,000 had been improperly included in the deficiency judgment, and hence reversed with directions.

No further proceedings of any kind were directly taken in the deficiency judgment action. After the decision in 120 Cal. 220, *supra,* had become final, Cowdery instituted an independent action against the bank on July 15, 1898, in which he prayed that the order of sale under the foreclosure decree be set aside and annulled. In that action the trial court ordered that the original deficiency judgment "be modified and reduced" by $1,000, and refused to set aside the order of sale. This was the order appealed from involved in the appeal in 139 Cal. 298, *supra.* The question was whether or not the "modification" by the trial court in the Cowdery action was substantial compliance with the mandate of the Supreme Court reversing with directions the deficiency judgment in the Bandmann action. It was properly held that it was not. It was in this connection that the Supreme Court used the language relied upon by defendants about the legal effect of a reversal. (139 Cal. 298, *supra,* at p. 303.) It was in this connection that the court pointed out that the legal effect of the reversal as to Cowdery was to vacate the judgment and render it void. The theory was that rights vested upon the reversal which could not be taken away by treating the reversal as a modifica-

tion. It was held that the trial court in the Cowdery action had no legal right to modify something that did not exist.

This case has no application to the instant one. Not only did the Cowdery case not involve any question of costs, or of interest on costs, but it involved what the Supreme Court held was an indivisible judgment. That judgment was reversed. Hence it no longer existed. Here the order allowing the $1,097.37 has existed since December 17, 1954, and has long since become final. That allowance of costs has never been vacated. The legal effect of the so-called "reversal" was not to reverse the allowance of costs, but to add to that allowance. Hence the Cowdery case is not in point.

The orders appealed from are modified so as to provide that the item of $6,980.49 allowed as a cost on appeal shall bear interest at the legal rate from April 12, 1957, to the date of payment. As so modified the orders are affirmed, the plaintiff to recover its costs on this appeal.

Gibson, C. J., Traynor, J., and Dooling, J., concurred.

WHITE, J., Dissenting and Concurring.—I concur with the majority's holding that when this court "reversed" the order of the trial court of December 17, 1954, excluding the bond premium as an item of cost on appeal, and ordered the trial court to determine the necessity of the bond, such action by this court was, in legal effect, a reversal of the trial court's judgment. (47 Cal.2d 469 [304 P.2d 7].) I dissent, however, from the further holding that when this court "reversed" the trial court's determination of a lack of necessity, and again remanded the matter to the trial court for further proceedings this was but a modification of the trial court's subsequent judgment. (51 Cal.2d 346, 352 [333 P.2d 10].) In order to reach what the majority now feel this court should have accomplished at that time we cannot, in effect, modify our judgment at this late date. But the majority has done just that in holding that when we said "reversal" we intended "modification." This holding is squarely in conflict with *Cowdery* v. *London etc. Bank,* 139 Cal. 298 [73 P. 196, 96 Am.St.Rep. 115], as will hereinafter appear.

In those cases wherein this court has held that interest properly runs from the date of the original entry of a judgment later modified, resort has heretofore been made to language of modification, rather than reversal. In *Barnhart* v. *Edwards,* 128 Cal. 572 [61 P. 176], relied on by the majority, it appears

at page 574 that the remanding order there under consideration was as follows: "The order denying a new trial will thereupon be affirmed. Judgment will then be entered in accordance with the findings thus corrected." In *Beeler* v. *American Trust Co.*, 28 Cal.2d 435 [170 P.2d 439], also relied on by the majority, it appears that it had been provided in the remanding clause as follows: "In accordance with the views above expressed, the judgment is modified by striking therefrom the figures $477.88, and inserting in their place the figures $907.88, and as so modified, the judgment is affirmed." (See *Beeler* v. *American Trust Co.*, 24 Cal.2d 1, 29 [147 P.2d 583].) In the case now engaging our attention this court provided in the remanding clause that ". . . the order is reversed with directions to the trial court to allow the premiums on said bond as a cost on appeal." (*Supra,* 51 Cal.2d 346, 352.) Manifestly this remand set aside the existing judgment and required the trial court to enter a new and different judgment.

Unless the doctrine of *stare decisis* is to be consigned to the limbo of forgotten legal principles, then the decision herein is foreclosed by this court's prior decision in *Cowdery* v. *London etc. Bank, supra,* 139 Cal. 298. As stated in the majority opinion it appears in that case that it had been adjudged on appeal from an earlier decision that an order and a deficiency judgment in a foreclosure action "be, and the same hereby are, reversed, and the case remanded, with directions that the trial court enter judgment in accordance with the views herein expressed." (*London etc. Bank* v. *Bandmann,* 120 Cal. 220 [52 P. 583, 65 Am.St.Rep. 179].) The views expressed in the opinion in the latter case required the entry of a new deficiency judgment in a lesser amount than the original judgment. The trial court purported to comply with the mandate by entering an order that the original judgment "be modified and reduced to the sum of $2,526.50, by deducting from said deficiency judgment the sum of $1,047.84 . . . ." It was held in the Cowdery case that by employing the language of reversal this court unequivocally ordered the judgment set aside; that there was thereafter no judgment outstanding; that the purported attempt to modify such a judgment was of no force and effect because there was no judgment to modify; and that a foreclosure sale made thereunder was vacated by the reversal.

The majority seek to distinguish the Cowdery case on the ground that the trial court's judgment in that case did not involve the question of interest, whereas in the instant case the

judgment does. This is a completely unrealistic approach to the problem. The question here, as in the Cowdery case, is whether a trial court's judgment continues in existence after appeal and decision thereon by an appellate court. If so, then it is conceded that interest runs from the date of the original entry of the judgment. On the other hand if the effect of the appellate decision is to set the trial court's judgment aside and require the entry of a new and different judgment, then interest thereon runs only from the date of entry of such later judgment. The majority recognize that once the nature and effect of the appellate decision is resolved the award of interest naturally follows. The basic and fundamental question for determination then is not whether the prevailing party is entitled to interest on the judgment, but whether the original judgment remains in effect after an appellate decision thereon. On this issue it is the nature of the appellate decision which is determinative, not the nature of the action in the trial court. While it can be said that the Cowdery case dealt with foreclosure and deficiency judgments, and that the instant case dealt with costs on appeal and interest thereon, the distinction is one without a difference. We are dealing with judgments in both cases, and the majority recognize that the award of costs on appeal is in itself a judgment. More specifically we are dealing in both instances with the effect on the existence of these judgments of an appellate decision which purports to ''reverse'' each judgment. Finally, the legal effect of the remand is identical in each case. As the majority point out as the sole ground for their holding that the reversal was in reality a modification, all that was required of the trial court on remand in the instant case was to include a sum of money which originally should have been included in the judgment. But the legal effect of the decision in the Cowdery case is the same. There all that was required by the remand was that the trial court exclude a certain sum of money which should have been excluded in the first instance. Nevertheless this court held in the Cowdery case that the action taken on appeal could not be deemed a modification. From the foregoing it is manifest that for purposes of the decision which must be made herein the Cowdery case is on all fours.

As pointed out in the Cowdery case the significance of an appellate court's language in remanding a matter cannot be ignored. The issue as stated by the court in that case was ''Whether or not a reversal of a decree of foreclosure, with directions to the court below to enter a judgment in conformity

with the opinion of the appellate court, vacates the decree and affects a sale made under it, where the only change ordered was the deduction of about one thousand dollars from the sum declared due. . . .'' (*Cowdery* v. *London etc. Bank, supra,* 139 Cal. 298, 301.) In resolving this issue, the court stated: ''The legal effect of the order of the supreme court was to reverse and vacate the judgment, and not merely to modify it. Upon a decision of the supreme court that there was material error in the action of the court below, that court may direct the character of the subsequent proceedings in the lower court, and its mandate will vary according to its views as to the proper course to be pursued. It may conclude not to reverse the judgment, but to modify it, by eliminating some portion, or by adding something to it, leaving the remaining part of the judgment below to stand affirmed and in full force and effect from the date of its original entry or rendition; or it may reverse the judgment, which means to entirely vacate it, and may remand the cause for a new trial; or if a new trial is not necessary, it may upon the reversal remand it, with directions to the lower court to enter a particular judgment. To reverse is 'to overthrow; set aside; make void; annul; repeal; revoke, as, to reverse a judgment, sentence, or decree' (Century Dictionary), or, 'to change to the contrary, or to a former condition' (Standard Dictionary). . . . The distinction between a reversal of a judgment and an affirmance with a modification is too marked and radical to justify us in disregarding it. The decision of the court as to the form of its judgment or mandate, and as to what shall be the future proceedings in the court below, is a part of its duty generally, and particularly under section 957 of the Code of Civil Procedure, and as such it is presumed to have received the same consideration as any other feature in the case. We are bound to assume that this court in this case acted advisedly and deliberately, and had good reason for ordering a reversal rather than a modification and affirmance. The part of the order directing the entry of a new judgment related solely to the proceedings after the reversal and the return of the case to the court below, and was not intended to, nor could it, change the reversal to a mere modification. Neither can the fact that it may now appear to us that the same result could have been reached by a modification justify this court in now changing the effect of the mandate.'' (*Cowdery* v. *London etc. Bank, supra,* 139 Cal. 298, 303-304.)

I am persuaded that we should not depart from the seasoned

and sound principles enumerated in the Cowdery case. Trial judges, members of the bar and litigants as well, are entitled to rely upon the fact that when an appellate tribunal directs a reversal it "acted advisedly and deliberately, and had good reason for ordering a reversal rather than a modification and affirmance" (*Cowdery* v. *London etc. Bank, supra*, 138 Cal. 298, 304), rather than be required to delve into the uncertain realm of speculation that must necessarily follow the abandonment of established rules of interpretation.

From the foregoing it necessarily follows that upon the reversal of that portion of the judgment retaxing costs relating to the bond premium, and until the entry of the judgment of January 20, 1959, ordering that the bond premium be included as an item of costs on appeal, there was no judgment in being upon which interest on the bond premium might run.

The issue with which we are concerned in the instant case is a simple one—did this court mean what it said when it reversed the order in *Stockton Theatres, Inc.* v. *Palermo, supra*, 51 Cal.2d 346, 352? Assuming that it did, I would affirm the order of the trial court allowing costs, and the order denying the motion to vacate and enter a different judgment.

Schauer, J., and McComb, J., concurred.