[No. A120987. First Dist., Div. Two. Apr. 22, 2009.]

YVETTE MUNOZ et al., Plaintiffs and Respondents, v.
CITY OF UNION CITY et al., Defendants and Appellants.

200

COUNSEL

Murphy, Campbell, Guthrie & Alliston, George Edson Murphy, Suzanne M. Nicholson; Ferguson, Praet & Sherman and Bruce D. Praet for Defendants and Appellants.

Law Office of Daniel U. Smith, Daniel U. Smith; Gwilliam, Ivary, Chiosso & Brewer and Steven R. Cavalli for Plaintiffs and Respondents.

OPINION

KLINE, P. J.—This is the third appeal in a case arising from the death of Lucilla Amaya in an incident with the Union City police. A jury found the City of Union City and Officer Tod Woodward liable for negligence and battery, and apportioned the negligence 45 percent to the city, 50 percent to the officer and 5 percent to Lucilla. This court upheld the finding of liability against Woodward for unreasonable use of force and against the city under principles of vicarious liability, but reversed the jury's verdict against the city based on its direct negligence. We remanded with directions for the trial court to "enter a new judgment consistent with the jury's verdict against [the officer] and this opinion." The trial court held that our decision required the plaintiffs' recovery to be reduced by 45 percent. The plaintiffs appealed, and we agreed with their contention that the trial court instead should have apportioned the 45 percent liability initially attributed to the city between Woodward and Lucilla, in the proportion established by the jury's verdict, making the officer responsible for 91 percent of the liability and Lucilla responsible for 9 percent. The trial court entered judgment in accordance with our opinion and awarded postjudgment interest from the date of the original judgment. The City of Union City and Woodward (collectively appellants) now urge that the trial court should have awarded interest only from the date of the most recent judgment. We affirm.

## STATEMENT OF THE CASE AND FACTS

The factual background of this case is recited at length in our first opinion, *Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077, 1083–1093 [16 Cal.Rptr.3d 521] (*Munoz I*). In brief, Lucilla Amaya was shot and killed in 1998 by Union City Police Officer Tod Woodward, who had been summoned to the house in which Lucilla, under the influence of methamphetamine and armed with two knives, was located with her daughter and father. Woodward

shot Lucilla when she made a movement that he testified led him to believe she was going to kill her daughter and father.

At the jury trial, the plaintiffs claimed Woodward was negligent both because of the manner in which he supervised the police response and because he personally used deadly force. (*Munoz I, supra,* 120 Cal.App.4th at p. 1094.) They also sought to hold Union City liable under the doctrine of vicarious liability, based on Woodward's fault, and separately for the city's direct negligence in selecting, training, supervising and disciplining police officers, and failing to promulgate procedures to guide police response to situations such as presented here. (*Id.* at pp. 1110–1112.) The jury returned a verdict against both the defendants, apportioning the fault 50 percent to Woodward, 45 percent to the city and 5 percent to Lucilla. (*Id.* at p. 1083.) Judgment was entered on May 14, 2001. (*Ibid.*)

The majority in our prior opinion affirmed the judgment against Woodward on the basis of the jury's finding of unreasonable use of force. (*Munoz I, supra,* 120 Cal.App.4th at p. 1101.) It was conceded that Union City was liable for the judgment against Woodward under the doctrine of vicarious liability. (*Id.* at p. 1110.) We held, however, that the judgment against Union City based on its direct negligence could not be sustained because this theory of liability was not grounded upon a violation of a statutory duty by the public entity. (*Id.* at p. 1082; *Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175 [7 Cal.Rptr.3d 552, 80 P.3d 656] (*Eastburn*).)

On remand, the plaintiffs argued to the trial court that *Munoz I* removed Union City from the universe of tortfeasors because of its sovereign immunity, requiring the portion of fault erroneously allocated to the city to be allocated between the remaining tortfeasors, Woodward and Lucilla. (*Munoz v. City of Union City* (2007) 148 Cal.App.4th 173, 177 [55 Cal.Rptr.3d 393] (*Munoz II*).) Union City argued that its 45 percent portion of the liability could not be reallocated to Woodward and the plaintiffs' judgment had to be reduced by that amount. (*Id.* at p. 177.) The trial court ultimately agreed with the city, reasoning that, although sovereign immunity limited the plaintiffs' ability to collect damages from the city for policy reasons, this did not change the fact that the city was responsible for part of what occurred at the Amaya residence. (*Id.* at pp. 181–182.) The trial court entered a revised judgment against Woodward for 50 percent of the plaintiffs' damages. (*Id.* at pp. 177–178.) Union City paid the judgment against Woodward with interest from the date of the original judgment.

In *Munoz II,* we held that the trial court erred in reducing the plaintiffs' judgment because, under *Eastburn, supra,* 31 Cal.4th 1175, in the absence of a statutory basis for liability, the city was not a tortfeasor, meaning there

was no basis for allocating a portion of the plaintiffs' damages to the city. (*Munoz II, supra*, 148 Cal.App.4th at p. 182.) Union City urged us to remand for retrial on the allocation of damages, arguing that this court could not speculate as to how the jury would have allocated fault if Woodward had been the only defendant. (*Id.* at pp. 182–183.) We concluded, however, that there was no rational basis upon which the jury could have viewed the presence or absence of Union City as a defendant as altering Woodward's and Lucilla's respective responsibility. (*Id.* at p. 184.) Since the jury's allocation of 50 percent of the liability to Woodward and 5 percent to Lucilla reflected a determination that Woodward was 10 times more responsible than Lucilla, we held the plaintiffs' damages should be allocated in the same ratio, 91 percent to Woodward and 9 percent to Lucilla. (*Ibid.*) Our disposition stated: "The judgment is reversed and the matter remanded to the trial court, with directions to enter a new judgment apportioning liability 9 percent to Lucilla and 91 percent to Woodward." (*Munoz II*, at p. 186.)

Back in the trial court, the plaintiffs filed their motion for entry of a new judgment, seeking postjudgment interest from May 14, 2001, the date of the original judgment. Union City opposed the motion with respect to the start date for the interest award. On December 10, 2007, the court granted the plaintiffs' motion and awarded interest from the date of the original judgment. Notice of entry of judgment was served on January 10, 2008.

Union City and Woodward filed a timely notice of appeal on March 10, 2008.

## DISCUSSION

■ "A judgment bears legal interest from the date of its entry in the trial court even though it is still subject to direct attack. (*Bellflower City School Dist.* v. *Skaggs* [(1959)] 52 Cal.2d 278, 280 [339 P.2d 848].) When a judgment is modified upon appeal, whether upward or downward, the new sum draws interest from the date of entry of the original order, not from the date of the new judgment. (*Beeler* v. *American Trust Co.* [(1946)] 28 Cal.2d 435, 438 [170 P.2d 439]; *Barnhart* v. *Edwards* [(1900)] 128 Cal. 572, 575 [61 P. 176]; 1 A.L.R.2d 479, 510–512, 520–521.) On the other hand, when a judgment is reversed on appeal the new award subsequently entered by the trial court can bear interest only from the date of entry of such new judgment. (*Cowdery* v. *London etc. Bank* [(1903)] 139 Cal. 298, 303 [73 P. 196].)" (*Stockton Theatres, Inc.* v. *Palermo* (1961) 55 Cal.2d 439, 442–443 [11 Cal.Rptr. 580, 360 P.2d 76] (*Stockton*).) The question when interest begins depends on "the substance of the order" and not "mere formalism." (*Snapp v.*

*State Farm Fire & Cas. Co.* (1964) 60 Cal.2d 816, 821 [36 Cal.Rptr. 612, 388 P.2d 884] (*Snapp v. State Farm*).) Thus, "a 'reversal' that practically and legally is a 'modification,' should be treated for purposes of the accrual of interest as a modification." (*Id.* at pp. 821–822.)

In *Stockton*, the trial court had allowed certain costs on appeal sought by the plaintiff but disallowed one item, the cost of a surety bond. The plaintiff successfully appealed. The reviewing court held the bond premium could be included in costs if it was reasonably necessary to preserve appellate rights. The trial court's order was reversed and the court directed to determine whether the bond was necessary and, if so, to include the premium as an item of costs. (*Stockton, supra,* 55 Cal.2d at pp. 440–441.) After a hearing at which both parties offered evidence, the trial court concluded the bond was not necessary and again denied the item of costs. A second appeal was again successful, the appellate court ruling that the evidence demonstrated as a matter of law that the bond was necessary. (*Id.* at p. 441.) The trial court's order was reversed and the trial court directed to allow the bond premium as a cost on appeal. (*Ibid.*) The trial court did so, providing for interest from the date of its order. On yet another appeal, it was held that interest should have been awarded from the earlier date of the trial court order finding the bond unnecessary and denying it as an item of costs. (*Id.* at p. 442.)

*Stockton* explained that interest would not run from the original costs order because that order was not modified but rather was reversed with directions for the trial court to hold a hearing on the necessity for the bond. (*Stockton, supra,* 55 Cal.2d at p. 443.) As the court stated, "[u]p until this point no award of costs for this item could have been made because there had been no hearing or finding on the issue of necessity for the bond." (*Ibid.*) After the trial court held the required hearing and found the bond unnecessary, the effect of the next reversal was different. "The legal effect of this 'reversal' was to make the order of April 12, 1957, state what it should have stated on that date. In a very real sense, in legal effect, it increased the original amount awarded as costs, and determined that, after showing necessity, plaintiff was entitled to this award as of April 12, 1957. Instead of reversing with directions, by allowing the item and then affirming the order as modified, this court 'reversed.' This 'reversal' obviously was, in law and in fact, a modification." (*Id.* at pp. 443–444.)

In *Snapp v. State Farm, supra,* 60 Cal.2d 816, the plaintiffs' house was damaged due to events that began during the term of an insurance policy but continued after that period expired. The trial court found the injury was covered by the policy and the damage exceeded the $25,000 policy limits, but

held the insurance company liable only for the smaller amount of damage that occurred before expiration of the policy. (*Id.* at p. 817.) On appeal, it was held that the insurance company was liable, as a matter of law, for not only the damage that occurred during the policy period but also, up to the policy limits, for damage that occurred later but was caused by factors existing and operating before the end of the period. (*Id.* at pp. 817–818.) The trial court having already determined that the damage exceeded the policy limits, the appellate court found the insurance company liable for the full $25,000. (*Id.* at p. 818.) However, "[i]nstead of directly ordering that the findings and judgment should be modified by increasing the judgment to $25,000, and affirming the judgment as so modified, the appellate court provided '. . . the judgment is reversed with directions to enter judgment for plaintiffs in the amount of $25,000.' " (*Id.* at p. 818.) The trial court then entered judgment for $25,000 without taking further evidence. (*Ibid.*)

Applying the rules of *Stockton*, the court in *Snapp v. State Farm* held that the plaintiffs were entitled to interest from the date of the original judgment. The court explained: "The obligation to pay at least $8,168.25 [the damage occurring during the policy period] has existed ever since the entry of the original judgment. This obligation was not set aside and vacated by the 'reversal.' The legal effect of that reversal was to determine that as of the date of the original judgment plaintiffs were entitled to $25,000. Thus the original judgment was increased from $8,168.25 to $25,000, based solely on the record then before the appellate court. No issues remained to be determined. No further evidence was necessary. Thus the so-called 'reversal' with directions, was, in fact and in law, a 'modification.' " (*Snapp v. State Farm, supra,* 60 Cal.2d at p. 820.)

The trial court in the present case awarded interest from the date of the original judgment on the basis that the judgment against Woodward had never been reversed, only modified upward in *Munoz II.* Although the disposition in *Munoz II* said the judgment was reversed, the trial court found that "the legal effect of the 'reversal' was simply to modify upwards the original judgment Plaintiffs had already obtained against Woodward."

Union City, by contrast, asks us to view the case from the perspective of the judgment against it, not the judgment against Woodward. Union City argues that *Munoz I* reversed the initial judgment against the city, and *Munoz II* reversed the second judgment apportioning liability. Accordingly, the city argues interest could not begin to run until the date of the new judgment entered after remand in *Munoz II.*

Our decision in *Munoz I*, as stated above, affirmed the original judgment in part and reversed it in part. Resolution of the current dispute requires us to

consider both aspects of that disposition. *Munoz I* affirmed both the judgment against Woodward, holding him liable for 50 percent of the plaintiffs' damages, and the judgment against Union City for that same 50 percent of the plaintiffs' damages, under principles of vicarious liability. (*Munoz I, supra*, 120 Cal.App.4th at p. 1082.) We reversed the judgment against Union City for the 45 percent liability originally assigned to it due to its own direct negligence. Although the litigation continued as to the consequences of this elimination of the city's liability for its direct negligence, our reversal of this portion of the judgment did not alter the fact that the city's liability for 50 percent of the damages, along with Woodward's, had been established by the original judgment. The further proceedings in the trial court and on subsequent appeal did not involve the city's liability for its direct negligence, which essentially dropped out of the case, but rather the question whether its vicarious liability, along with Woodward's liability, would be increased as a result of the *Munoz I* reversal.

*Munoz II* reviewed and reversed the trial court's decision to remove the improperly assigned 45 percent liability from the case. The effect of this reversal, as the trial court found, was to modify upward the liability that had been assigned to Woodward, and therefore to the city, in the original judgment. We are not persuaded by appellants' argument that the trial court proceedings following *Munoz I* negate plaintiffs' right to interest from the date of the original judgment. Appellants liken the situation to that in *Stockton, supra*, 55 Cal.2d 439, which held interest did not run from the original order because it was only after a subsequent trial court determination that the plaintiff's right to include the challenged item of costs was established. Although the right to include the item was established by the reviewing court's reversal of the trial court's factual finding that the bond was unnecessary, interest ran from the date of this hearing because, the appellate court found, it was at this hearing that the trial court should have allowed the item. Prior to this hearing, the plaintiff's right to include the bond as an item of costs had not been established because the factual determination of necessity had not been made.

Appellants argue that interest in the present case cannot run from the date of the original judgment because, as in *Stockton*, the trial court was required to conduct further proceedings after *Munoz I* to determine how to deal with the 45 percent liability erroneously assigned to Union City. Unlike the situation in *Stockton*, however, here there was no factual determination to be made, no prerequisite to be satisfied before liability could be allocated properly. The original judgment making Woodward and the city liable to the plaintiffs had been affirmed, establishing the plaintiffs' right to recovery based on Woodward's conduct and Union City's vicarious liability for it. The only question was whether the liability established by that judgment would be increased.

Appellants also argue that our decision in *Munoz II* must be viewed as a true reversal, not a modification of the original judgment, because further factfinding remained necessary to determine the proper allocation of the 45 percent liability originally assigned to Union City. Although this court determined the allocation and directed the trial court to implement it, appellants argue we could have chosen to remand for retrial on the allocation issue and, had we done so, interest could only have run from the date of the judgment allocating the liability.

■ We disagree. *Munoz II* held it was unnecessary to remand for a trial on allocation because the original jury's verdict unambiguously determined the parties' comparative fault and there was no rational basis upon which elimination of Union City's direct liability could have altered the jury's determination. (*Munoz II, supra,* 148 Cal.App.4th at pp. 183–185.) *Munoz II* did not engage in any factfinding function but rather determined the proper allocation based on the jury's verdict. That verdict established the plaintiffs' right to recover from Woodward and Union City for damages due to Woodward's conduct, and our decisions in *Munoz I* and *Munoz II* served to modify the original judgment by increasing the amount of the defendants' liability. Since the plaintiffs' entitlement to recovery was established by the original judgment, the trial court correctly determined that postjudgment interest should run from the date of that judgment.

Appellants also argue *Munoz II* must be viewed as a true reversal rather than a modification because the trial court judgment appealed from held there should be no reallocation of the city's 45 percent liability and we decided, to the contrary, that the liability should be reallocated. Appellants contrast the situation with that in cases where an appellate court finds fault with an existing allocation and orders a different one. They cite *Ehret v. Congoleum Corp.* (2001) 87 Cal.App.4th 202 [104 Cal.Rptr.2d 370] and *Aceves v. Regal Pale Brewing Co.* (1979) 24 Cal.3d 502 [156 Cal.Rptr. 41, 595 P.2d 619], overruled on other grounds in *Privette v. Superior Court* (1993) 5 Cal.4th 689, 701–702 [21 Cal.Rptr.2d 72, 854 P.2d 721], as illustrating scenarios in which the appellate court altered an existing allocation and interest properly was held to run from the original judgment. As we have said, the question when interest begins depends on substance, not formalism. (*Snapp v. State Farm, supra,* 60 Cal.2d at p. 821.) The original judgment in the present case allocated fault between Lucilla, Woodward and Union City. *Munoz I* determined that a portion of the fault assigned to the city was not legally sustainable. *Munoz II* held that portion of fault should be allocated to the remaining parties, based on the allocation of fault reflected in the original jury's verdict. This was, in effect, a modification of the original judgment.

The judgment is affirmed.

Haerle, J., and Richman, J., concurred.