[No. F016135. Fifth Dist. Sept. 1, 1992.]

RICHARD ESPINOZA, Plaintiff and Respondent, v.
LARRY MACHONGA, Defendant and Appellant.

**COUNSEL**

Finkle, Davenport & Barsamian and Robert J. Rosati for Defendant and Appellant.

Miles, Sears & Eanni and William J. Seiler for Plaintiff and Respondent.

**OPINION**

**ARDAIZ, J.**—Richard Espinoza sued Albert Kantor, Larry Machonga and the Housing Authority of Fresno County (hereinafter Housing Authority) for

personal injuries after the glass portion of a door shattered and glass fragments struck Espinoza's eye. The Housing Authority settled with Espinoza for $5,000. The superior court found the settlement to have been made in good faith. The case then went to judicial arbitration.

Espinoza, Kantor, Machonga and the Housing Authority all participated in the arbitration. The parties stipulated that Kantor had no liability in the case. The arbitrator found that Espinoza had incurred medical expenses of $6,242.94. He found that Espinoza himself was 10 percent at fault, that the Housing Authority was 45 percent at fault, and that Machonga was 45 percent at fault. The arbitrator's award also stated that "Plaintiff is hereby awarded the sum of $6,242.94 and an additional amount of $15,000 for general damages." The arbitrator also awarded costs of suit to Espinoza.

The "Decision of Arbitrator" was filed with the court. No party sought a trial de novo. After more than 30 days had passed from the filing of the arbitrator's decision (see Code Civ. Proc., § 1141.20, subd.(a), and Cal. Rules of Court, rule 1615(c)), Espinoza moved in superior court for entry of an "amended judgment." The declaration of Espinoza's attorney, submitted as part of the motion, declared in part:

"That by agreement of the parties, the arbitrator was not advised of the amount of the settlement with the Housing Authority, nor was he asked to determine the effect of the settlement on the amount of the award against the remaining defendants. Instead, the parties have agreed to submit this issue to the court for resolution."[1]

Machonga opposed Espinoza's motion. Machonga did not contest the court's authority to "amend" the "judgment" so as to specify a particular

---

[1]Because the parties agreed to the procedure used in this case, no party objected to the superior court making the determination of the dollar amount for which Machonga would be held liable to plaintiff Espinoza. But we do *not* wish our summary of the procedural history of this case to be viewed as a road map of an acceptable procedure to be followed in future cases. The question of the dollar amount of Machonga's liability to Espinoza should have been submitted to the arbitrator for his determination, and the determination should have been made by the arbitrator. An arbitrator's award "shall determine all issues properly raised by the pleadings, including a determination of any damages . . . ." (Rule 1615(a), Cal. Rules of Court.) "If the purpose of judicial arbitration *is to avoid traditional litigation, then that* avoidance should be as complete as possible, with the arbitrator deciding *all* disputed issues . . . ." (*Dickens* v. *Lee* (1991) 230 Cal.App.3d 985, 989 [281 Cal.Rptr. 783], italics original.) Instead, the parties here presented all but one issue to the arbitrator, then managed to persuade the court to decide the remaining issue, with the dissatisfied party (appellant Machonga) then appealing to this court. The procedure utilized by the parties here was not a "simplified and economical procedure for obtaining prompt and equitable resolution of their disputes," as intended by the Legislature when the Legislature enacted the judicial arbitration statutes. (Code Civ. Proc. § 1141.10, subd. (b)(1).)

dollar amount of the judgment against Machonga and in favor of Espinoza.[2] Rather, the dispute between Espinoza and Machonga was about what this dollar amount should be, and about how the Housing Authority's $5,000 settlement with Espinoza figured into the calculation of the appropriate amount of Machonga's liability to Espinoza. Espinoza contended that the proper amount of his judgment against Machonga, exclusive of costs, should be $10,900.88. Machonga contended that the correct figure should be $7,368.65. The superior court ruled that Espinoza's figure was the correct figure and entered an "amended judgment" stating that Machonga was liable to Espinoza for $10,900.88 plus costs.[3] Machonga now appeals.

### CALCULATION OF THE NONSETTLING DEFENDANT'S LIABILITY

■ The issue presented on this appeal is the same issue that was presented to the superior court: how does the settling defendant's (Housing Authority's) $5,000 settlement with the plaintiff (Espinoza) affect the amount for which the nonsettling defendant (Machonga) is liable to the plaintiff? After we first set forth the applicable principles of law, we will then set forth how each party contends that the calculation of the nonsettling defendant's (Machonga's) liability should be made. We will then explain why we hold that the plaintiff's calculation, adopted by the superior court, was correct.

Code of Civil Procedure section 877 states in relevant part:

"Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:

"(a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater."

---

[2] See footnote 1, *ante.* And as for the propriety of the superior court "amending" a judgment after a case has been arbitrated and no trial de novo has been sought, see Code of Civil Procedure section 1141.22, rule 1615(d), California Rules of Court, and *Pierson* v. *Honda* (1987) 194 Cal.App.3d 1411 [240 Cal.Rptr. 148].

[3] This so-called "amended judgment" is the only judgment which appears in the record presented to us on this appeal. It appears to be the one and only judgment that was entered in this case.

Section 877, subdivision (a) was already in effect in 1986 when the electorate approved the initiative measure popularly known as Proposition 51.[4] Section 4 of this initiative measure now appears at Civil Code section 1431.2, which states:

"(a) In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount.

"(b)(1) For purposes of this section, the term 'economic damages' means objectively verifiable monetary losses including medical expenses, loss of earnings, burial costs, loss of use of property, costs of repair or replacement, costs of obtaining substitute domestic services, loss of employment and loss of business or employment opportunities.

"(2) For the purposes of this section, the term 'non-economic damages' means subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation."

Under subdivision (a) of Civil Code section 1431.2, a personal injury defendant is no longer liable for any amount of the plaintiff's noneconomic damages which exceeds the percentage of those noneconomic damages attributable to that defendant. This is a change from pre-Proposition 51 law of joint and several liability, under which a defendant who bore only a small share of fault could be left with the obligation to pay all or a large share of the plaintiff's damages if other more culpable tortfeasors were insolvent. (*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1198-1200 [246 Cal.Rptr. 629, 753 P.2d 585].) The change abolished the rule of joint and several liability for "non-economic damages" as defined by subdivision

[4]In 1986 the relevant portion of Code of Civil Procedure section 877 read as follows: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort—[¶] (a) It shall not discharge any other such tortfeasor from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater; . . ." What appears in the text is the present version. The changes made since 1986 do not affect our analysis of this case. In other words, we would reach the same result in this case even if the 1986 version of section 877 were still in effect today.

(b)(2) of the statute, and retained the joint and several liability rule for "economic damages" as defined in subdivision (b)(1). (*Evangelatos, supra.*)[5]

Espinoza points out that under pre-Proposition 51 law, Machonga's liability to him would have been computed as follows:

| | |
|---|---|
| $21,242.94 | total damages incurred by plaintiff Espinoza. |
| - 2,124.29 | reduction of total damages by 10 percent due to plaintiff's |
| $19,128.65 | 10 percent fault. |
| -5,000.00 | amount of Housing Authority's settlement with plaintiff |
| $14,128.65 | Machonga's liability under pre-Proposition 51 law. |

Espinoza's computation in the present case, which was adopted by the superior court, was as follows. First, the damages suffered by Espinoza totalled $21,242.94 (economic damages of $6,242.94 plus noneconomic damages of $15,000). The percentage of total damages which were economic damages was 29.388 percent ($6,242.94 of $21,242.94). The economic portion of the Housing Authority's $5,000 settlement with Espinoza was thus 29.388 percent of $5,000, or $1,467.77. Machonga's liability to Espinoza was therefore:

| | |
|---|---|
| $ 6,242.94 | total economic damages incurred by plaintiff. |
| - 624.29 | reduction of economic damages by 10 percent due to |
| $ 5,618.65 | plaintiff's 10 percent fault |
| - 1,467.77 | the economic portion of Housing Authority settlement (29.388 percent of $5,000) |
| $ 4,150.88 | Machonga's share of the remaining economic damages |
| + 6,750.00 | Machonga's 45 percent of plaintiff's $15,000 noneconomic damages |
| $10,900.88 | Machonga's liability to plaintiff |

Appellant Machonga contends, however, that no portion of the Housing Authority's $5,000 settlement with Espinoza should be considered payment by the Housing Authority for those noneconomic damages for which the Housing Authority alone could have been held liable. Machonga contends that his liability should be calculated as follows:

---

[5]In this case there is, of course, no dispute that the arbitrator's award to Espinoza of $6,242.94 in medical expenses represents "economic damages" and that the award of "$15,000 for general damages" is an award of "non-economic damages" within the meaning of Civil Code section 1431.2.

| | |
|---|---|
| $ 6,242.94 | total economic damages incurred by plaintiff |
| - 624.29 | reduction of economic damages by 10 percent due to |
| $ 5,618.65 | plaintiff's 10 percent fault |
| + 6,750.00 | Machonga's 45 percent of plaintiff's $15,000 noneconomic |
| $12,368.65 | damages |
| - 5,000.00 | reduction due to Housing Authority's $5,000 settlement |
| $ 7,368.65 | Machonga's liability to plaintiff |

While Machonga refers to this calculation as reflecting an "undifferentiated" settlement by the Housing Authority for $5,000, what Machonga's calculation actually does is use the Housing Authority's $5,000 settlement to pay $5,000 of the $5,618.65 in economic damages (here, medical expenses) for which the Housing Authority and Machonga would have been jointly and severally liable if the Housing Authority had not settled.[6] Thus, Machonga contends that the Housing Authority's settlement should be used to pay 88.99 percent of Espinoza's recoverable economic damages, even though the arbitrator found that Machonga and the Housing Authority were equally at fault (45 percent each) for Espinoza's damages, and even though only 29.388 percent of Espinoza's damages were economic. While Espinoza concedes that Machonga's liability to Espinoza is $3,227.77 lower than it would have been under pre-Proposition 51 law ($14,128.65 under pre-Prop. 51, compared to $10,900.88 under post-Prop. 51), Machonga's computation would reduce that liability yet another $3,532.23 (the difference between plaintiff's and the superior court's computation of $10,900.88 and Machonga's figure of $7,368.65).

It is true that the language of Code of Civil Procedure section 877 states that a release given in good faith "to one or more of a number of tortfeasors claimed to be liable for the same tort . . . shall reduce the claims against the others in the amount stipulated by the release . . . or in the amount of the consideration paid for it whichever is the greater." Now, however, a personal injury plaintiff's valid "claim" against one such tortfeasor for noneconomic damages can never be the liability of "the others." (Civ. Code § 1431.2, *supra*.) The payment of such a claim by one tortfeasor is not the payment of

---

[6]This can perhaps be more easily seen if the calculation is written as follows:

| | |
|---|---|
| $ 6,242.94 | total economic damages incurred by plaintiff |
| - 624.29 | reduction of economic damages by 10 percent due to plaintiff's |
| 5,618.65 | 10 percent fault |
| - 5,000.00 | reduction due to Housing Authority's $5,000 settlement |
| 618.65 | |
| + 6,750.00 | Machonga's 45 percent of plaintiff's $15,000 noneconomic damages |
| $ 7,368.65 | Machonga's liability to plaintiff |

a claim for which "the others" might ever be held jointly and severally liable. Thus, there is no longer any such claim "against the others" to "reduce." Although appellant points out that there is no reported appellate court case either approving or disapproving of a trial court's posttrial allocation of a pretrial settlement to economic and noneconomic damages paid by the settling defendant, leading commentators have endorsed such a practice.[7] In Flahavan et al., California Practice Guide: Personal Injury (The Rutter Group 1991) the authors state at chapter 4, paragraph 4:185.20 et seq.:

"[4:185.20] Damages allocation and fault concerns in Prop. 51 cases: Applying the § 877(a) 'good faith' settlement credit is even more problematic in Prop. 51 cases: The settlement value must be allocated between economic and noneconomic damages, because each defendant may only be held liable for his or her *proportionate share* of noneconomic damages in direct proportion to his or her share of fault ([Civ. Code] § 1431.2(a)); thus, only that part of the settlement value attributable to plaintiff's *economic* damages may be credited against the nonsettling defendants' liability. The issue then is *how to make the proper allocation.*

"1) [4:185.21] Competing interests between plaintiff and nonsettling defendants: On this question, plaintiff and the nonsettling defendants have *competing* interests:

"a) Plaintiff naturally has the greatest interest in allocating as *little* as *possible* to *economic damages* . . . since the nonsettling defendants are jointly and severally liable for the full amount of those damages (i.e., the smaller the allocation to economic damages, the *less* nonsettling Ds will be credited with at trial).

"b) Defendants, on the other hand, have the greatest interest in allocating as *much* as *possible* to *economic damages* . . . so as to reduce their ultimate liability to plaintiff (i.e., the greater the allocation to economic damages, the *more* nonsettling Ds will be credited with at trial).

"2) [4:185.22] Express allocation by settling parties: The settling parties could *expressly* allocate settlement amounts to economic and noneconomic

---

[7]Appellant Machonga has called our attention to *Arbuthnot* v. *Relocation Realty Service Corp.* (1991) 227 Cal.App.3d 682 [278 Cal.Rptr. 135]. *Arbuthnot* is inapplicable here. It holds that "the procedures set forth in *Abbott Ford* for evaluating sliding scale agreements apply in instances such as the one before us, where payment is contingent or where value other than cash is given." (227 Cal.App.3d at p. 690.) It points out that the settling parties "should have provided the trial court with a value for the settlement agreement." (*Ibid.*) The court remanded the case to the trial court for a hearing "on the amount of consideration 'paid' by" the settling defendant for the settlement. (*Id.* at p. 691.) In the present case, the value of the Housing Authority's settlement with Espinoza was the amount which the Housing Authority agreed to pay to Espinoza, i.e., $5,000.

damages; but it is doubtful that their express allocation would hold up against the *nonsettling* parties (even if a 'good faith' certification is obtained at a § 877.6 hearing, the nonsettling parties would have the right to argue fault apportionment anew before the trier of fact; see [¶] 4:185.25).

"3) [4:185.23] Determination at § 877.6 hearing? There is yet no definitive answer on whether Prop. 51 allocations can or should be made at a § 877.6 'good faith' hearing; and if so, what effect the determination would have at trial.

"a) [4:185.24] If the court at the § 877.6 hearing simply judges 'good faith' by weighing total settlement value against total damages, *the credit in favor of the nonsettling defendants would be left uncertain until the jury trial allocated plaintiff's damages and defendants' fault.*

"*At that point, the settlement amount could be allocated in the same proportions.*

"b) [4:185.25] Alternatively, should the court deciding good faith make a *Tech-Bilt* 'ballpark' estimate of plaintiff's economic and noneconomic damages, either the parties or the court would have to allocate a specified portion of the settlement value to economic damages, and the court would then determine whether that allocation satisfied the 'good faith' test.

"But more important concerns are raised by such an approach: Most significantly, would the settlement value allocated to *economic* damages at the good faith hearing be *binding* at trial as to the amount by which the judgment should be reduced in favor of the *nonsettling* defendants. (Clearly, 'no' if the nonsettling parties did not have notice of the § 877.6 hearing and a 'meaningful' opportunity to participate in it, see ¶ *4:199.3b, 199.10ff.* But even if they did participate, they *might* still have the right to have these issues tried by the jury—this question is open for now.)" (Italics added to paragraph 4:185.24.)[8]

Section 1431.2 provides that the responsibility for the noneconomic portion of the damages allocated to each defendant shall be several and not joint. Therefore, each defendant is solely responsible for his or her share of the noneconomic damages. Thus, that portion of the settlement attributable to noneconomic damages is not subject to setoff. To do otherwise would, in

---

[8]The authors' reference to "*Tech-Bilt*" in paragraph 4:185.25 is a reference to *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159].

effect, cause money paid in settlement to be treated as if it was paid as a joint liability. This could not properly be done on a verdict and we see no basis why it should be done on a settlement. Therefore, viewing the undifferentiated settlement figure as a whole, under these circumstances it is appropriate to calculate the percentage of the award attributable to economic damages in relationship to the entire award. In this case, that amount is 29.388 percent. Viewing the settlement figure in relationship to the ultimate award, 29.388 percent of the settlement figure is allocable to economic damages. Accordingly, the balance would be noneconomic damages. In that we have concluded setoff may only be had against economic damages, the setoff in this case would be $1,467.77 (29.388 percent of $5,000). Such a conclusion preserves allocation in accord with proportionate fault and does not create a setoff to the nonsettling tortfeasor of noneconomic damages. Under this rationale, we conclude the superior court was correct in its determination that $10,988 was the proper amount of Espinoza's judgment against Machonga, exclusive of costs.

Finally, appellant Machonga makes the conclusory argument that the allocation between economic and noneconomic damages made here by the superior court was "purely arbitrary and a denial of due process." We disagree. The allocation was not arbitrary. The judge relied upon the amounts of economic and noneconomic damages incurred by the plaintiff Espinoza, and on the percentages of fault attributable to each party, as found by the arbitrator at an arbitration hearing in which appellant himself participated. Machonga had his opportunity to persuade the arbitrator that Espinoza's noneconomic damages were something less than $15,000, and that the percentage of Espinoza's economic damages should therefore have been higher than 29.388 percent, but he was unable to so persuade the arbitrator. Machonga also attended the superior court's hearing on what the correct judgment amount against him should be, but was unable to persuade the superior court that his liability to Espinoza should be fixed at $7,368.65 rather than at $10,900.88. And if Machonga's argument that he was denied due process is meant to imply that the allocation of the Housing Authority's $5,000 settlement to economic and noneconomic damages should have been made at the good faith settlement hearing held prior to the arbitration, he has failed to make any showing that he requested any such allocation at the time of the good faith settlement hearing, or that he was for any reason unable to make such a request.[9]

---

[9]We do not here reach the issue of whether a trial court presiding over a good faith settlement hearing should make any such allocation if it is requested to do so. (See Code Civ. Proc., § 877.6 and Flahavan, *supra*, at ¶ 4:185.26.)

The judgment is affirmed. Costs are awarded to respondent.

Best, P. J., and Schultz, J.,* concurred.

---

*Judge of the Kings Superior Court sitting under assignment by the Chairperson of the Judicial Council.