[No. B141773. Second Dist., Div. Four. Feb. 21, 2001.]

KATHLEEN ANNE EHRET et al., Plaintiffs and Respondents, v.
CONGOLEUM CORPORATION, Defendant and Appellant.

**COUNSEL**

Horvitz & Levy, Lisa Perrochet, L. Rachel Lerman Helyar; McHale & Conner, Michael J. McHale and Bruce Janger for Defendant and Appellant.

Davis & Thomas, Joseph Daniel Davis; and Charlotte E. Costan for Plaintiffs and Respondents.

**OPINION**

**EPSTEIN, J.**—This is the second time this wrongful death case has been before us. In this appeal, we are asked to determine whether postjudgment interest should run from the date of entry of the judgment on the original jury verdict, or from the judgment entered following our remittitur on the first appeal. We conclude that, as a matter of statutory interpretation, the trial court correctly ruled that postjudgment interest runs from the original judgment, and affirm.

## Factual and Procedural Summary

Robert Ehret was a journeyman floor covering contractor who was diagnosed with terminal pericardial mesothelioma. He sued several flooring manufacturers and distributors, including Congoleum Corporation, alleging that his illness was caused by asbestos in various flooring products he installed 20 to 30 years earlier. All the manufacturers other than Congoleum settled for a total of $2,565,000. One distributor, L. D. Brinkman & Co (Brinkman), also went to trial. (*Ehret v. Congoleum Corp.* (1999) 73 Cal.App.4th 1308, 1312 [87 Cal.Rptr.2d 363] (*Ehret I*).)

Mr. Ehret died during the trial. The case continued as a wrongful death action brought by his widow and three other heirs. The jury returned a special verdict in favor of plaintiffs and against Congoleum and Brinkman. The jury assigned 25 percent fault to Congoleum and 12.5 percent fault to each of six former defendants. The jury also found that Brinkman's predecessor in interest had distributed the asbestos flooring products of Congoleum and two other manufacturers. The jury's award to plaintiffs totaled $3,322,551: $622,551 for medical and burial expenses and loss of earnings; $2,550,000 for loss of consortium to Mr. Ehret's widow; and $50,000 for loss of care, comfort and society to each of Mr. Ehret's three other heirs. (*Ehret I, supra,* 73 Cal.App.4th at p. 1314.)

Judgment was entered in accordance with the jury's special verdict. Congoleum filed posttrial motions, including one to reduce its liability for noneconomic damages under Civil Code section 1431.2 (commonly known as Proposition 51); one for a setoff for the settlements by the other defendants; and one for new trial, based on excessive damages. Brinkman sought a judgment notwithstanding the verdict on the ground that the jury's apportionment of 12.5 percent of the damages to two defendants whose products had been distributed by Brinkman's predecessor in interest was not supported by substantial evidence. Brinkman had been held vicariously liable for the distribution of products manufactured by those two defendants. (*Ehret I, supra,* 73 Cal.App.4th at pp. 1314-1315.)

The trial court granted Brinkman's motion for judgment notwithstanding the verdict because it found insufficient evidence that other manufacturers' products had contributed to Mr. Ehret's injuries. Based on this ruling, the trial court eliminated the apportionment of fault to manufacturers other than Congoleum. (*Ehret I, supra,* 73 Cal.App.4th at p. 1315.) The trial court also declined to apportion noneconomic damages under Civil Code section 1431.2 and held that the settlements with other defendants should be apportioned between Mr. Ehret's personal injury claims and the wrongful death

claims, so that the portion attributable to pain and suffering was not set off against the jury award. The court ascribed 75 percent of the settlements to pain and suffering, and ordered that 25 percent of the settlements be subtracted from the jury verdict, for a total verdict against Congoleum and Brinkman of $2,681,301. On July 29 1997, the court entered judgment notwithstanding the verdict in this amount. (73 Cal.App.4th at pp. 1315-1316.) Congoleum appealed the judgment.

In the unpublished portion of our opinion in *Ehret I, supra,* 73 Cal.App.4th 1308, we agreed with Congoleum's argument that the jury's finding of fault as to other manufacturers is supported by substantial evidence, and over-turned the trial court's grant of judgment notwithstanding the verdict on that ground. We also found substantial evidence to support the jury's assignment of a greater percentage of fault to Congoleum, and reinstated the jury's apportionment of fault to manufacturers other than Congoleum

In the published portion of our opinion in *Ehret I,* we ruled that Proposition 51 (Civ. Code, § 1431.2) applied, reversed the trial court's allocation of the other defendants' settlements between noneconomic and economic damages, and applied the formula set out in *Espinoza v. Machonga* (1992) 9 Cal.App.4th 268 [11 Cal.Rptr.2d 498], using the original jury award. (*Ehret I, supra,* 73 Cal.App.4th p. 1323.) We remanded the case to the trial court to enter judgment against Congoleum in the amount of $817,896 and awarded Congoleum its costs on appeal. (*Ibid.*) Our remittitur returning jurisdiction to the trial court issued on October 8, 1999.

Congoleum filed a memorandum of costs on appeal in the amount of $46,035.16, which would reduce the amount owed by Congoleum to $784,217.61 plus postjudgment interest. In the course of settlement negotiations between Congoleum and plaintiffs, a dispute arose about the date on which postjudgment interest began to run. Congoleum offered to settle by paying $800,000 for both the principal and interest due on the judgment. The parties agreed that the plaintiffs would not claim postjudgment interest beyond November 12, 1999, when the tender of $800,000 was received. For purposes of appeal, Congoleum has accepted the plaintiff's calculation of the daily rate of postjudgment interest at $214.85.

The plaintiffs accepted the tender of the $800,000, but refused to enter a satisfaction of judgment because, they argued, they were entitled to post-judgment interest from the date of the original June 27, 1997 judgment through November 12, 1999. Congoleum took the position that postjudgment interest began to accrue only with the issuance of our remittitur in *Ehret I.*

Congoleum moved the trial court to compel entry of a full satisfaction of judgment pursuant to Code of Civil Procedure section 724.050 (all further

statutory references are to this code). Plaintiffs opposed the motion on the ground that Congoleum owed interest from the original June 27, 1997 judgment.

The trial court entered judgment in accordance with our remittitur on January 12, 2000, and transferred the case to another judge for ruling on Congoleum's motion. The trial court ultimately ordered Congoleum to pay postjudgment interest from the June 27, 1997 judgment on the jury verdict. Congoleum appeals from that order.

### DISCUSSION

■ We are asked to interpret two statutory provisions related to the accrual of postjudgment interest. Congoleum argues that section 685.020 provides that postjudgment interest is to run from the entry of judgment following remittitur on the previous appeal. Plaintiffs argue that section 685.020, subdivision (a) continued existing practice which awarded interest from the judgment entered on the verdict. As we explain, we conclude that plaintiffs have the better argument.

In 1982, the Legislature enacted the Enforcement of Judgments Law. (Stats. 1982, ch. 1364, § 2, p. 5070; § 680.010.) The 1982 legislation was "the result of a recommendation of the California Law Revision Commission. *See Tentative Recommendation proposing The Enforcement of Judgments Law*, 15 Cal. L. Revision Comm'n Reports 2001 (1980.)" (Recommendation on 1982 Creditor's Remedies Legislation (Sept. 1982) 16 Cal. Law Revision Com. Rep. (1982) p. 1003 (Commission Report).) (2) The Supreme Court "has recognized that Law Revision Commission comments are usually a reliable guide to legislative intent. [Citations.]" (*In re Bryce C.* (1995) 12 Cal.4th 226, 241 [48 Cal.Rptr.2d 120, 906 P.2d 1275].)

■ The Tentative Recommendation Proposing The Enforcement of Judgments Law (Oct. 1980) 15 California Law Revision Commission Report (1980) pages 2215-2216, recommended the adoption of a new section 685.020: "(a) Except as provided in subdivision (b), interest commences to accrue on a money judgment on the date of entry of judgment. [¶] (b) Unless the judgment otherwise provides, if a money judgment is payable in installments, interest commences to accrue as to each installment on the date the installment becomes due." The commission's comment to subdivision (a) provided: "Subdivision (a) of Section 685.020 *continues the general rule as to the time postjudgment interest commences to run.* See former Section 682.2; Dixon Mobile Homes, Inc. v. Walters [(1975)] 48 Cal.App.3d 964, 122 Cal.Rptr. 202 . . . ; Section 1033. . . ." (Tentative Recomendation, pp. 2215-2216, italics added.)

When the Legislature adopted the Enforcement of Judgments Law in 1982, it adopted subdivision (b) of the proposed section 685.020, but did not adopt subdivision (a) of the section as proposed by the Law Revision Commission. (Com. Rep., 16 Cal. Law Revision Com. Rep., *supra*, p. 1229.) In 1983, the Legislature enacted chapter 155 as an urgency measure: "In order to facilitate and coordinate the implementation of the Enforcement of Judgments Law, which will become operative July 1, 1983, it is necessary that this act go into immediate effect. [¶] . . . This act shall become operative on July 1, 1983." (Stats. 1983, ch. 155, § 31, p. 566.)

In chapter 155, the Legislature adopted the proposed subdivision (a) to section 685.020: "Except as provided in subdivision (b), interest commences to accrue on a money judgment on the date of entry of the judgment." (Stats. 1983, ch. 155, § 10, p. 538.) The Law Revision Commission comment to the 1983 amendment incorporates the comment previously proposed by the Commission: "Subdivision (a) of Section 685.020 continues the general rule as to the time postjudgment interest commences to run. See former Section 682.2, Section 1033; Dixon Mobile Homes, Inc. v. Walters, 48 Cal.App.3d 964, 122 Cal.Rptr. 202 (1975)." (Cal. Law Revision Com. com., 17 West's Ann. Code Civ. Proc. (1987 ed.) foll. § 685.020, p. 98.)

As amended in 1982, former section 1033 provided for the filing of a memorandum of costs, for interest on the judgment in a contract claim, and for interest in all other cases: "The clerk or judge shall include in the judgment, . . . [in any case other than contract where the claim was unliquidated], *interest on the verdict or decision of the court, from the time it was rendered or made*, and the costs, if the same have been taxed or ascertained." (Stats. 1982, ch. 812, § 2, p. 3102, italics added.)

*Dixon Mobile Homes, Inc. v. Walters, supra*, 48 Cal.App.3d 964, was cited by the Law Revision Commission in its comment to section 685.020, subdivision (a). In that case, the seller of a mobile home obtained a judgment against the buyer, who was in default, and also sought interest. Section 1033 had the same provision then as it did in 1982 regarding the accrual of interest: from the "time [the verdict or decision of the court] was rendered or made, . . ." (*Dixon supra*, 48 Cal.App.3d at p. 974.) The *Dixon* court held: "[T]he award must bear interest at the legal rate during the period following rendition of the verdict or decision and until entry of judgment. (*Espinoza* v. *Rossini* (1967) 257 Cal.App.2d 567, 569 [65 Cal.Rptr. 110] . . . .) Thereafter, any final judgment for money bears interest at the legal rate from the date of entry. This is so regardless of whether or not the original claim was liquidated or unliquidated, in contract or in tort. [Citations.] *Interest also continues during an appeal. (Espinoza* v. *Rossini, supra*, 257 Cal.App.2d at p. 569.)" (*Id.* at p. 975, italics added.)

Contrary to the argument by Congoleum, we think this statutory history expresses a clear intent on the part of the Legislature to continue the existing practice for accrual of postjudgment interest under section 1033.

Our conclusion that the Legislature intended to continue existing practice by adopting section 685.020, subdivision (a) is bolstered by the action of the Legislature in 1985. That year, at the urging of the California Judges Association, the Legislature undertook a consolidation and simplification of the statutes governing court costs. (Sen. Rules Com., Office of Sen. Floor Analyses, Analysis of Sen. Bill. No. 654 (1985-1986 Reg. Sess.) as amended May 15, 1985, pars. 2 through 6.) As a part of that effort, former section 1033, which addressed both costs and postjudgment interest, was repealed. (Stats. 1986, ch. 377, § 10, p. 1579.) A new section 1033 was enacted, one of several that provide for court costs.[1] But the bill did not enact a new provision directed at the accrual of postjudgment interest to replace the language deleted from former section 1033. As we read section 685.020, subdivision (a), a new provision was not required on the repeal of former section 1033, since section 685.020 was intended to carry on the practice as it had been under section 1033.

After the repeal of former section 1033, the Judicial Council enacted California Rules of Court, rule 875, effective January 1, 1987: "The clerk shall include in the judgment any interest awarded by the court and the interest accrued since the entry of the verdict." The 1987 Annual Report of the Judicial Council, on changes to the Rules of Court, states: "Rule 875 was adopted to direct the clerk to include in the judgment any interest awarded by the court and the interest accrued since the entry of the verdict." (Judicial Council of Cal., 1987 Ann. Rep. (1987) p. 67.) Congoleum argues that we should not enforce rule 875 because it is inconsistent with section 685.020. As we read it, rule 875 continues the practice of former section 1033 on the accrual of postjudgment interest. As we have discussed, it is consistent with the intent of the Legislature in enacting section 685.020, subdivision (a).[2]

Our case is remarkably similar to *Espinoza v. Rossini, supra,* 257 Cal.App.2d 567, which was cited by the court in *Dixon Mobile Homes, Inc.*

---

[1]As enacted in 1985, the new section 1033 provided: "Costs or any portion of claimed costs shall be determined by the court in its discretion in accordance with Section 1034 where the prevailing party recovers a judgment that could have been rendered in a court of lesser jurisdiction." (Stats. 1986, ch. 377, § 11, p. 1579.)

[2]We note that there is a small technical variation in the language of section 685.020 and California Rules of Court, rule 875. The former calls for postjudgment interest from the entry of the judgment, while the latter calls for interest from the entry of the verdict. The language of rule 875 follows the language of former section 1033, which called for interest from the date the verdict was rendered. The difference in the two provisions is immaterial here, because the verdict was reached on June 26, 1997, and the judgment on the verdict was entered the following day, June 27, 1997.

*v. Walters, supra*, 48 Cal.App.3d 964. In *Espinoza*, a jury rendered a personal injury verdict in favor of plaintiff Espinoza on April 27, 1965. It awarded $32,000 and costs against defendant William Rossini and $10,000 and costs against his employer, Rossini Brothers. (*Espinoza*, 257 Cal.App.2d at p. 568.) The defendants' motions for judgment notwithstanding the verdict and for new trial were granted. Plaintiff appealed. The Court of Appeal reversed the lower court orders granting a new trial and judgment notwithstanding the verdict. (*Ibid.*) The case was remanded with directions to enter judgment in favor of the plaintiff, with the following modification: " 'The order granting a new trial and the judgment notwithstanding the verdict are reversed with directions to enter a judgment on the verdict in favor of Raymondo Espinoza and against Albert William Rossini, Jr. and Rossini Brothers in the total sum of $32,000 plus costs, the liability of Rossini Brothers under said judgment to be limited to $10,000 plus costs.' " (*Ibid.*)

The issue in *Espinoza* was whether the plaintiff was entitled to interest from the original judgment on the verdict, or only from the judgment following remittitur from the first appeal. The trial court ruled that interest accrued only from the remittitur. (*Espinoza v. Rossini, supra*, 257 Cal.App.2d at p. 569.) The *Espinoza* court reversed. It relied on section 1033: "[T]he award bears interest at the legal rate . . . for the interim period following verdict or decision until entry of judgment." (*Espinoza v. Rossini, supra*, 257 Cal.App.2d at p. 569.) The court quoted the Supreme Court's decision in *Stockton Theatres, Inc. v. Palermo* (1961) 55 Cal.2d 439, 442-443 [11 Cal.Rptr. 580, 360 P.2d 76]: " 'A judgment bears legal interest from the date of its entry in the trial court even though it is still subject to direct attack. [Citation.] When a judgment is modified upon appeal, whether upward or downward, the new sum draws interest from the date of entry of the original order, not from the date of the new judgment. [Citations.] On the other hand, when a judgment is reversed on appeal the new award subsequently entered by the trial court can bear interest only from the date of entry of such new judgment. [Citations.]' " (*Espinoza v. Rossini, supra*, 257 Cal.App.2d at p. 569.)

The *Espinoza* court also relied upon *Snapp v. State Farm Fire & Cas. Co.* (1964) 60 Cal.2d 816 [36 Cal.Rptr. 612, 388 P.2d 884] (*Snapp*). In *Snapp*, the court applied the rules announced in *Stockton Theatres, Inc. v. Palermo, supra*, 55 Cal.2d 439, concluding that the question of commencement of interest depends on the substance of the appellate court's order. (*Snapp*, 60 Cal.2d at p. 821.) The Supreme Court in *Snapp* quoted from *Stockton Theatres,* which characterized the reversal in that case as a modification rather than a reversal. (*Snapp*, 60 Cal.2d at p. 820.)

Similarly, in *Snapp*, the plaintiffs had an insurance policy for $25,000 covering physical loss to real property. During the policy period, a structure

sustained substantial damage. When the insurance company denied coverage, the plaintiffs sued. The trial court held there was coverage, and that the damages exceeded the $25,000 policy limits, but awarded damages only up to the date of the termination of the policy, $8,168.25. (*Snapp, supra*, 60 Cal.2d at p. 817.) The appellate court held that the insurer was liable for the full amount of the policy. (*Id.* at pp. 817-818.) Applying the rules set out in *Stockton Theatres,* the *Snapp* court concluded that this was a modification rather than a reversal of the judgment, and that postjudgment interest should run from the entry of the original judgment on jury verdict. (*Id.* at pp. 821-822.)

Congoleum attempts to distinguish the line of cases just discussed by arguing that the disposition in *Ehret I* was a full reversal rather than a modification. We disagree. As we have discussed, in *Ehret I*, we reinstated the original jury verdict and its allocation of fault. Our only modification was to the offsets allowed Congoleum for the settlements reached by the other defendants. We based our calculation of these offsets on the jury's special verdict. (*Ehret, supra*, 73 Cal.App.4th at p. 1323.)

Our decision in *Ehret I* was a modification of the judgment, not a reversal. Under the principles we have discussed, plaintiffs were entitled to interest from the entry of the original judgment. The trial court properly awarded that amount.

Congoleum relies on *Landsberg v. Scrabble Crossword Game Players, Inc.* (9th Cir. 1986) 802 F.2d 1193, a diversity case in which the Ninth Circuit applied the *Stockton Theatres* line of cases to determine when postjudgment interest accrued. *Landsberg* is distinguishable. In that case, interest ran from the judgment following remittitur from the first appeal because the original judgment was reversed for insufficiency of evidence. (*Id.* at p. 1200.) Unlike *Ehret I*, *Landsberg* was a full reversal rather than a modification of the original judgment.

Congoleum also invokes the one judgment rule and the rules of finality under the doctrine of res judicata to support its argument that interest should run only from the judgment entered following remittitur. There is no merit to this analogy in light of the statutory history we have discussed.

Under section 685.020, plaintiffs were entitled to postjudgment interest from the date of entry of the original judgment on the jury's verdict.

## DISPOSITION

The judgment is affirmed.

Vogel (C. S.), P. J., and Hastings, J., concurred.

On March 21, 2001, the opinion was modified to read as printed above.